JAMES M. DARRAH v. JAMES GOW ET AL.

*Contract—Logs and logging.*

One of several log-owners, having logs to be driven out of a creek into the Muskegon river, was placed in charge of the drive by said owners, as agent, under a written contract giving him power to make assessments on the several owners, as required, to pay the cost of such driving, upon an agreed basis as to mileage and amount of logs. Said contract recited that said log-owners were desirous of having their logs driven into the main Muskegon river before the main spring drive on said river of the *present* year passed said creek, but contained no definite agreement on the part of said agent to drive the logs out by that time, which he failed to do, and certain of said log-owners notified him not to drive any more logs for them, after which he completed the said drive, and made further assessments, which they refused to pay, and he brought suit therefor.

*Held,* that the time when the logs should be driven out of the creek is plainly limited, namely, *before* the main spring drive on the Muskegon river in the year the contract was made passed said creek. and that, whether the plaintiff was at fault or not for failing to so drive them out, the defendants had a right to say to him, as their agent, that they did not wish him to drive their logs out of the creek after that time, and that it would require a new contract to authorize him to do so. An examination of the opinion is essential to a full understanding of the case.

Error to Mecosta. (Palmer, J.) Argued July 9 and 10, 1889. Decided October 18, 1889.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellants.

*M. Brown* and *Frank Dumon,* for plaintiff.

[The points of counsel are stated in the opinion.— REPORTER.]

CHAMPLIN, J. On February 18, 1886, the parties named therein entered into the following agreement, namely:

"Memorandum of agreement made and entered into this eighteenth day of February, A. D. 1886, by and between James M. Darrah, of Big Rapids, Michigan, party of the first part; Layman & Elliott, of Evart, parties of the second part; Gow, Majo & Company, of Muskegon, Michigan, parties of the third part; J. & G. K. Wentworth, of Bay City, Michigan, parties of the fourth part; T. H. Lavery, of Harrison, Michigan, party of the fifth part; and A. N. Doty, of Harrison, party of the sixth part; and Ducey Lumber Co., of Muskegon, party of the seventh part.

" *Whereas,* the parties hereto are respectively the owners or in charge of various lots of pine saw-logs now on the banks of Town Line creek, in the counties of Roscommon and Clare, State of Michigan, or that will be delivered there before the spring drive of the present year, which logs they are desirous of having driven into the main Muskegon river before the main spring drive on said river of the present year passes said creek; and

" *Whereas,* the said parties hereto are desirous of entering into some arrangement whereby they may accomplish the driving of said logs with economy and with the least inconvenience to all parties:

"Now, therefore, it is hereby mutually agreed between the parties hereto:

"1. That Frank B. Wilson, of Harrison, surveyor,

77 MICH—2.

shall, as soon as practicable, go and locate the various rollways of the said several parties hereto, and determine their distance by the course of the stream, as near as practicable, from the mouth of said Town Line creek, and his determination in that regard shall be binding upon the parties hereto, for the purposes hereinafter mentioned.

"2. That James M. Darrah, of Big Rapids, shall be and is hereby designated and appointed and authorized to take charge of the driving of the logs of the said several parties hereto from said creek into the main Muskegon river, and for that purpose is authorized to employ all necessary help and means, as the agent of the several parties hereto. He shall also make assessments as they may be needed upon the several parties hereto, for the cost and expense of such driving. His assessments for that purpose on the several parties hereto shall be paid to him, or his order, on demand.

"3. The liability for assessment of the said several parties hereto under this instrument shall be established and determined as follows: Each party shall pay his proportion of each assessment, which shall be ascertained in the following manner: The number of million feet of logs owned by each party shall be multiplied by the number of miles said logs are distant from the mouth of the stream; the whole number of miles thus obtained bears each assessment, and each party's proportion will be his percentage of mileage for all logs driven to the whole mileage of the entire lot of logs. It is hereby understood and agreed that the expenses of the surveyor above named shall be borne by the parties in proportion to the number of feet of logs which they own out of the whole lot.

"4. It is hereby understood and agreed that James M. Darrah, so appointed to take charge of the work and business of driving said stream, shall first execute a good and sufficient bond, in the sum of five thousand dollars, with sureties to be approved by the parties hereto, or a majority of them, for the sure and faithful performance of his duties and employment, and that he will keep accurate and correct accounts of all the expense connected with said work, which shall be subject at any time to the inspection of any of the parties hereto; such books

also to show all assessments made, by whom paid, and in what manner expended."

After the contract was entered into, and before the ice had gone out of the stream, the surveyor named measured the river, and located the distance which the logs of the respective owners were to be driven. Darrah commenced preparations for driving in March, and began the work of driving in April. In order to facilitate the work, he built two dams,—one about nine miles from the mouth of the creek, which was built after consultation with the owners of the logs, and the other was located about two and one-half miles from the mouth, and was built without consultation with all of the owners of logs. The cost of both of these dams he charged to the expense of the log-owners. He continued driving until about June 10, with a force of men gradually increased to about 125. He then stopped on account of low water in the stream, which made it impracticable to drive at that time. In the last part of June there was a rain-fall, and he resumed work, and continued for about two weeks.

The rear of the drive in the main Muskegon river was driven past the mouth of the Town Line creek about July 10. It usually passed that point from June 15 to a month later. At the time the agreement was made, Darrah had known for a number of years about the time the rear of the drive on the main Muskegon river would leave Houghton lake. It usually takes about 15 days for the rear to pass the Town Line creek after it leaves Houghton lake. He also knew where the logs he was driving were destined for, and that they would not reach their destination that season if the rear of the drive passed the mouth of the creek before the logs were driven out.

During the progress of the work three successive assess- ments were made before the rear of the drive in the

main Muskegon river passed the mouth of the creek, and which were paid by Gow, Majo & Co., and after the rear had passed they objected to paying any more, and notified Darrah not to drive any more logs for them. Darrah was interested in driving the logs of Lavery and of J. & G. K. Wentworth, which were further up the creek. He resumed work again the last of August or the first of September. He stopped once after that, and finally got the logs run out in October.

He made assessments upon the parties to the contract after the 3d, but Gow, Majo & Co. only paid $1,000, and Darrah claims a balance due him under the contract of $2,069.79. He made proper demand for the payment of this sum, and, payment being refused, brought this suit for its recovery in *assumpsit,* filing a declaration upon the common counts only, and filed his bill of particulars, composed of two items, the first of which was for driving 7,000,000 feet of saw-logs down Town Line creek during the months of April, May, June, July, August, September, and October, 1886, and delivering them in Muskegon river, under the above agreement, at $2 per 1,000 feet, and the other item was the same, except it omitted to mention that the driving was done under the contract.

The defendants pleaded the general issue, and gave notice that the claim of the plaintiff arose under a written contract, a copy of which was set out; being the same contract set up by plaintiff under his bill of particulars. The cause for recoupment is stated in the notice as follows:

" That the said plaintiff wholly neglected and omitted to do and perform certain works which were requisite and necessary to be done and performed under and by virtue of the said agreement, according to the tenor and effect, true intent, and meaning thereof; that is to say, to drive and deliver from said Town Line creek, men-

tioned in said contract, the logs therein belonging to said defendants into the main Muskegon river before the main spring drive on said river for the said year 1886. And the said plaintiff also thereby craftily and subtly deceived the said defendants in this, to wit, that the said plaintiff afterwards, to wit, on April 1, 1886, and on divers other days and times between said first day of April and the first day of November of the same year, did and performed certain other works which were requisite and necessary to be done and performed under and by virtue of the said agreement, in a bad, inartificial, and unworkman-like manner, contrary to the form and effect, true intent, and meaning of his said promise and undertaking."

Upon the trial of the cause the counsel for defendants offered testimony to establish their claim for recoupment; and, on the objection of the plaintiff's counsel, the court excluded the testimony offered.

Upon the trial of the cause the plaintiff relied entirely upon the written contract as the basis of his recovery, and introduced no proof upon the *quantum meruit* count of his declaration. He claimed that he had substantially performed his contract, and gave testimony of the assessments made against the defendants, and of the balance remaining unpaid by them.

It is claimed by the defendants that the testimony did not disclose that the assessments claimed as due from defendants were made in accordance with the provisions of the agreement, which is specific as to the manner in which such assessments should be made.

It appears from the testimony that at the time the first four assessments were made the quantity of logs owned or controlled by the respective parties had not been reported to the plaintiff, and he was therefore obliged to make those assessments upon estimates, from the best information he could obtain; and such assessments were not made upon the basis provided for in the

contract. At the time, however, the fifth assessment was made, the quantity of logs was known, and it was testified to by the plaintiff's book-keeper, and not disputed, that the fifth assessment showed the full amount of defendants' logs, and that there was 2,119,610 feet in the 1-mile limit, 1,573,868 feet in the 10-mile limit, and 2,100,000 in the 11-mile limit, making a total of 5,793,478 owned by and under the control of the defendants.

The method of determining the assessment each party should pay, provided for in the contract, was to multiply the number of million feet of each party by the number of miles such logs were distant from the mouth of the stream, and the whole number of miles thus obtained bears each assessment; and each party was to pay in proportion as his mileage was to the whole mileage thus obtained. The defendants' mileage would be obtained as follows, viz.:

```
2,119,610, multiplied by 1, equals_____   2,119,610
1,573,868, multiplied by 10, equals_____  15,738,680
2,100,000, multiplied by 11, equals_____  23,100,000
                                                   ──────────
    Total mileage _____ 40,958,290
```

—Or nearly 41 miles.

The defendants insist that there was no testimony in the case showing the number of million feet of logs in the different mile limits belonging to the respective parties, and consequently there was no basis from which the jury could ascertain the amount which should be assessed to the defendants, and at the close of the case counsel for defendants requested the court to submit to the jury the following question, viz.:

"Can you find from the evidence in this case the amount of logs belonging to or controlled by either of the parties to the agreement, other than the defendants, in any particular mile of the creek in question?"

The court refused to submit the question, and exception was taken.

Counsel also contend that the assessments were not made in accordance with the contract. The testimony of the book-keeper was that the manner of making the assessments was as follows:

"We first took the distance of the logs that we were going to assess from the mouth of the creek, and multiplied the total number of feet by the mile, and then made the two, three, or five per cent. assessments upon that."

The books of Mr. Darrah, which were shown to have been kept under the requirements of the contract, were offered and received in evidence, and the witness testified that the pages of the journal containing the assessments to defendants were upon 48 and 50, and the assessments to all the parties were. contained upon pages 46 and 47. As these pages are not embraced in the bill of exceptions, we cannot say that they did not show that the assessments were erroneously made.

Two assessments upon defendants were put in evidence, and show that the quantity was multiplied by the distance or number of miles from the mouth of the creek, and upon this result a per cent. was assessed. It is claimed that this was erroneous, and that the assessment should have been upon a proportion of mileage, instead of a per cent. of the expenses. But if the expense to be assessed was a certain sum, and the number of million of feet contained in all of the logs in the creek were multiplied by the distance they were from the mouth of the creek, the result could as accurately be arrived at by ascertaining the per cent. each 1,000 feet so obtained would be of the amount of the expense to be assessed as it could be by making the proportion according to the mileage. It would be a different method of arriving at

the same result. In view of the testimony introduced, we do not think the court erred in refusing to submit the question of defendants' counsel to the jury. If there was no testimony upon the point covered by the question, it should have been made to appear that it was so from the record.

The court correctly charged the jury that "the plaintiff counts expressly upon this contract, and bases his right to recover by virtue thereof," and that it was incumbent upon him, before being entitled to a verdict under the issue framed, to prove by a fair preponderance of evidence that he had complied substantially upon his part with the terms of the written agreement.

The court also, in construing the written agreement, instructed the jury that the time was not limited in the contract in which Mr. Darrah was to drive out the logs, and that the law only required him to drive them out in a reasonable time, having reference to all the facts and circumstances detailed in the testimony,—acting in good faith; and if he had done so he had complied with his contract.

It appears to me that in this the circuit judge was mistaken. We must look to the language of the contract, and to the condition of things at the time it was entered into, and the object to be accomplished, to discover the intent of the parties. These parties were lumbermen, who had logs in this creek which they wished to have driven out into the main Muskegon river in time to have them driven down that river with the spring drive. The recital in the contract speaks the language, and expresses the intent, of all the parties to the agreement. They expressly say that they are desirous of having their logs driven into the main Muskegon river before the main drive on said river *of the present year* passes said creek. It was for this purpose, as well as the matter of economy

mentioned in the second recital, that they employed Darrah as their agent to accomplish that result. The time when the logs should be driven out of the creek is plainly limited, namely, before the main spring drive on the Muskegon river that year (1886) passed said creek.

The testimony shows that the failure to get the logs out by the time specified would leave the logs, in the technical phrase of log-drivers, "hung up," so they would not reach their destination until another year. Unlimited authority was placed in the hands of Darrah, as their agent, to drive the logs out. Adequate provision was also made in the contract for means to accomplish the undertaking. The proof is uncontradicted that he failed to drive the logs out before the drive in the main Muskegon had passed. Whether he was at fault or not, the defendants had a right to say to him, as their agent,—

"We don't want you to drive our logs left in the creek after the drive in the main Muskegon river has passed the creek."

When that time was passed, plaintiff had no right to employ men during the summer and fall and drive out defendants' logs, and assess the expense to them. It would require a new contract to authorize him to do that. Doubtless, defendants would be liable to Darrah for their share of the expenses of driving such logs as were driven out, until the rear of the main drive had passed, if the failure to drive them all out were owing to circumstances beyond his control. But there was no testimony definitely showing what their share would be, if anything, over and above what they had paid; and the case was not presented to the jury by the court upon that basis.

The plea of recoupment was not full and definite enough to allow defendants to recoup for damages suffered by

plaintiff's failure to perform the contract in the time limited by it.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.